UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARAO ABEL PEREIRA,

               Plaintiff,

          -against-

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION,

             Defendant.

23-CV-10396 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is proceeding *pro se* and *in forma pauperis* ("IFP"), filed this action

alleging that Defendants violated his rights. By order dated January 16, 2024, the Court directed

Plaintiff to amend his complaint to address deficiencies in his original pleading. Plaintiff

thereafter filed an amended complaint, but he failed to address the deficiencies noted by the

Court in the January 16, 2024 order. By order dated April 15, 2024, the Court granted Plaintiff

30 days' leave to file a second amended complaint. Plaintiff filed a second amended complaint

on June 17, 2024, and the Court has reviewed it. For the reasons set forth in this order, the Court

dismisses the second amended complaint, but grants Plaintiff 30 days' leave to replead his claims

in a third amended complaint.

## BACKGROUND

### A.    Plaintiff's Complaint and Amended Complaint

The Court assumes familiarity with the underlying facts of this case as summarized in the

Court's January 16 and April 15, 2024 orders. In his original voluminous pleading, Plaintiff sued

various federal and city entities and asserted claims arising from an array of unrelated incidents.

Among other assertions, Plaintiff alleged that: (1) his minor daughters were sexually abused by

teachers at their schools, day care centers, and a homeless shelter; (2) he received inadequate or

negligent healthcare in various New York City-area hospitals; and (3) he won judgments in various state court actions, but the defendants never paid him. Plaintiff also described problems he has had with various private businesses and federal and city government agencies.

In the January 16, 2024 order, the Court took the following actions: (1) dismissed any claims Plaintiff may have been attempting to assert on behalf of his daughters without prejudice to his daughters pursuing those claims on their own behalf; (2) determined that Plaintiff was attempting to assert unrelated claims against multiple different defendants in violation of Federal Rules of Civil Procedure 18 and 20; and (3) instructed Plaintiff to file an amended complaint concerning only one of the incidents detailed in his original complaint and noted that, if Plaintiff wished to pursue claims arising from other incidents, he must do so in separate actions. The Court also instructed Plaintiff that his amended complaint must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a short and plain statement showing that he is entitled to relief, and he must allege facts demonstrating that the Court has subject matter jurisdiction of his claims.

In response, Plaintiff filed an amended complaint consisting of the court's amended complaint form to which he attached 97 pages of documents, including 24 additional documents, captioned as amended complaints, naming various defendants, including the City of New York, city agencies, and private entities and individuals. In this pleading, Plaintiff again asserted multiple unrelated claims, including claims concerning the sexual abuse of his minor daughters and alleged discrimination and unfair treatment relating to his medical care at various health care facilities, housing, employment, and state-court cases.

In the April 15, 2024 order, the Court found that Plaintiff's amended complaint failed to cure the deficiencies identified in the January 16, 2024 order because he again asserted unrelated

claims against multiple defendants in violation of the joinder rules. The Court instructed Plaintiff to file a second amended complaint asserting claims from only one of the incidents described in the amended complaint and only naming as defendants the entities and individuals involved in that incident.

The Court further instructed Plaintiff that, as discussed in the Court's January 16, 2024 order, his second amended complaint must (1) contain a short and plain statement showing that he is entitled to relief, and (2) allege facts demonstrating that the Court has subject matter jurisdiction of his claims. The Court also directed that, if Plaintiff asserts claims under the Court's federal question jurisdiction in the second amended complaint, he must allege facts demonstrating that he has a viable federal cause of action. If he seeks to assert state law claims under the Court's diversity of citizenship jurisdiction, he must allege facts demonstrating that he and all defendants are citizens of different states and that his claims are worth in excess of the $75,000 jurisdictional threshold.

## B.    Plaintiff's Second Amended Complaint

On June 17, 2024, Plaintiff filed a second amended complaint in which he invokes the court's federal question and diversity jurisdiction and names the New York City Health and Hospitals Corporation ("H+H") as the sole defendant. Although he does not identify any other defendants in the caption of the second amended complaint, he also asserts that he is bringing claims against Bronx Lebanon Medical Center ("Bronx Lebanon"), "Grand Concourse Medical Center,"[1] and Jacobi Medical Center ("Jacobi") for "their failure to properly assess, diagnose, and treat [his] clinic, physic, symptoms in violation of [his] constitutional rights, New York State

---

[1] The Court was unable to find any information about the existence of a hospital by the name of Grand Concourse Medical Center.

Penal Code, anti-racial discrimination law, and anti-national origin discrimination law."[2] (ECF 11, at 5.) In the pleading, Plaintiff asserts four sets of claims that focus largely on allegedly inadequate or negligent healthcare that he received in various New York City-area hospitals. Plaintiff, who identifies himself as a Black man from Angola, attributes much of the deficient healthcare he received to discrimination based on his race and national origin. The assertions below are taken from the second amended complaint.

### 1.    First set of claims: urination problems, cancer, and penile implants

In September 2005, Plaintiff arrived in New York City from Angola with his two minor daughters and began seeking a primary healthcare provider. From January 2006 to November 2008, Plaintiff visited Bronx Lebanon Medical Center several times because he was experiencing frequent urination, and doctors there diagnosed him as having type 2 diabetes mellitus. Plaintiff was given treatment at Bronx Lebanon, which was "ineffective at solving [his] urination problems." (*Id*. at 6 ¶ 11.)

In January 2010, Plaintiff scheduled a urology appointment at St. Barnabas Hospital to get a second opinion. On January 10, 2010, he went to "Grand Concourse Main Hospital"[3] and was eventually diagnosed there with "middle state 3B prostate cancer." (*Id*. at 7 ¶ 15.) Plaintiff began radiation treatment, which, along with the cancer, left him "sexually impotent." (*Id*. ¶ 16.)

In May 2017, Plaintiff visited the Urology Department at Montefiore Hospital and was assigned to Dr. Pedro Maria, who referred him for an implant of penile prothesis ("IPP") surgery. On June 25, 2017, Plaintiff underwent the IPP surgery at Montefiore, but days later he

---

[2] Plaintiff writes using irregular capitalization. For readability, the Court uses standard capitalization when quoting from the second amended complaint. All other spelling, grammar, and punctuation are as in the original unless otherwise indicated.

[3] It is unclear whether "Grand Concourse Main Hospital" is a reference to St Barnabas Hospital.

"experienced severe discomfort and saw signs of infection around the implanted device." (*Id.* ¶ 20.) On January 17, 2023, Plaintiff had "corrective surgery" at Montefiore but, a week later, he noticed "indications of infection around the implanted device and cavity of scrotum." (*Id.* ¶¶ 22-23.) Plaintiff also suffered "weakness, dizziness, darkness of vision, and yellow urine." (*Id.* ¶ 23.) When Plaintiff saw Dr. Maria, he did not "acknowledge the irregularities" or that Plaintiff's lab work showed "low blood pressure verifying vital signs crutial in medical triage due to this indications show immediately any patology." (*Id.* ¶ 24.) Plaintiff saw several other doctors about his post-operation issues, but they told him to see Dr. Maria, with whom he could not get an appointment.

On May 10, 2023, Plaintiff attempted to consult Dr. Lorenzo, his primary doctor at St. Barnabas, about the infections, but Dr. Lorenzo would not see him on the "grounds that [his] post-operative infections are specific to Montefiore and therefore [Plaintiff] would have need [of] special attention from their doctors." (*Id.* at 8 ¶ 28.) Plaintiff was instead removed from St. Barnabas "on the disciplinary reasoning that [he] was being disrespectful and verbally abusive to Dr. Lorenzo." (*Id.* ¶ 29.)

On May 23, 2023, Plaintiff went to Bronx Hospital Center Emergency Room, but was told that there were not "enough specialist for his specific pathology." (*Id.* ¶ 30.) That same day, Plaintiff returned to Montefiore and took lab tests indicating that the infections were getting worse. Plaintiff was admitted to Montefiore and received antibiotics intravenously. Plaintiff continued that course of treatment on an ambulatory basis for about two weeks, but when the infection symptoms, which included pus coming from the operation wound, continued, he decided to pursue "alternative care" and obtained a referral to Mount Sinai Medical Hospital Complex. (*Id.* ¶ 34.)

At Mount Sinai, a urology specialist recommended that Plaintiff undergo surgery to remove the infected IPP device. On June 29, 2023, Plaintiff had the surgery and a temporary device was inserted to be removed when the wound was fully healed. Plaintiff, however, soon began "experiencing severe pain" and "noticed blood and yellow pus coming from the wound site." (*Id*. at 9 ¶ 42.) He went to Mount Sinai Emergency Room and was admitted for treatment. Although he was in pain throughout the night, he did not receive medical care until the next day. He was diagnosed with "Rare Pseudomonas Aeruginosa caused by Intro-Hospitalier infected IPP contamination." (*Id*. ¶ 47.) On July 14, 2023, an emergency surgery was scheduled "due to eminences of preforation, disrupture of penile gland (head) due to prothesis pressure from the badly inserted temporarily IPP device." (*Id*. ¶ 48.) At the time of the surgery, Plaintiff "exhibited necrotic tissue all over from [his] scrotum and penis and was only a few hours from deadly necrosis." (*Id*. ¶ 49.) On October 17, 2023, Plaintiff underwent an operation to "restore minimal levels of penile functioning."

On February 17, 2024, he received pre operation prep before a fifth surgery, including an MRI and CAT scan, which showed images of "two foreign objects in [his] pelvic." (*Id*. at 10 ¶ 51.) Plaintiff writes the following:

> I, Arao Abel Pereira in this referenced matter, have no doubt that, also I as a seen Black African patient, my body and organs were purposeful deliberately exposed for the studies, for the internal students experiences, testing organs functions/reaction to their scheduled/planned medicine course of studies on body of living, African Black man for learning college medical university internal students. Letting understand that Dr. Pedro Maria, left me incurably, my sixth operative appointment is being permanently concealed, with no date in the future, which means sixth operation at Montefiore to restore penile functioning is never finalized. As a consequence I'm living with the very strong discomfort, pain.

(*Id*. ¶ 52.) Plaintiff asserts that other operations will be required to remove the foreign objects and restore "basic penile functioning," that the inserted IPP device is "strongly painful and not

working at all," and that he is living as a "disabled unemployed man as a result of this medical negligence." (*Id*. ¶¶ 54-55.)

### 2. Second set of claims: vision issues

Plaintiff has suffered blurred vision since he moved to the United States in 2005. In March 2006, he sought treatment at St. Barnabas and was referred to a specialist to investigate whether he had glaucoma. In May 2008, Plaintiff, who was gradually losing his eyesight, was referred to Mr. Fleurex, a specialist ophthalmologist. Fleurex did not, however diagnose or treat Plaintiff for glaucoma "despite tests evidencing pressure at the front of [his] eyes." (*Id*. at 11 ¶ 61.) In August 2008, Plaintiff sought care for his persistent vision issues at Columbia Presbyterian Hospital, where he was diagnosed as "'Legally Blind' due to glaucoma." (*Id*. ¶ 63.)

### 3. Third set of claims: tumors

In 2019, Plaintiff began to suffer from tumors. A doctor at Bronx Lebanon determined that "the cause of the tumors [was] underneath the occipital neck area of [Plaintiff's] head" and referred him for removal of a tumor. (*Id*. ¶ 66.) After Plaintiff underwent surgery in November 2019 to remove a benign tumor, he experienced post operation pain and complications, and learned that a second surgery would be needed to "correct and remove growing tissue causing [him] discomfort and pain." (*Id*. ¶ 68.) In November 2021, Plaintiff underwent a second operation at Jacobi; the following year, in November 2022, another operation was scheduled to deal with the same issue; and on June 15, 2023, he underwent another operation at Jacobi, to "remove[] the repeated arising tumor previously incompletely removed." (*Id*. ¶¶ 69, 72.) Plaintiff has noticed that "throughout the years of operations on [his] neck, [he] has lost sensitivity in half of [his] head," exacerbating his vision problems and requiring him to have hearing aids. (*Id*. at 12 ¶ 73.)

4.    **Fourth set of claims: inappropriate sexual behavior**

Plaintiff asserts that for over a decade he and his two daughters have been subjected to "persistent inappropriate sexual behavior" and he attributes the alleged violations to racial and national origin discrimination. (*Id*. ¶ 74.) In particular, Plaintiff asserts that Dr. Joseph DeFrank and other doctors at St. Barnabas have "target[ed], groom[ed] and sexually abus[ed] patients." (*Id*. ¶ 77.) For example, on February 22, 2011, during an examination, DeFrank "inappropriately touch[ed]" Plaintiff on sensitive locations such as his abdomen, testicles, and penis while allegedly "doing a manual search of inflammation of lymphatic nodules." (*Id*. ¶ 81.) DeFrank also tried to arouse Plaintiff "to assess [his] libido and penile performance," but Plaintiff "promptly refused." (*Id*. ¶ 82.) DeFrank continued "conducting nonconsensual inappropriate exams" on Plaintiff "through diagnoses with diabetes and other existing and those undiagnosed pathology." (*Id*. at 13 ¶ 83.)

Plaintiff also makes references to an investigation by the police and the New York City Administration for Children's Services ("ACS") about actions taken by DeFrank involving Plaintiff's minor daughters. He asserts that neither DeFrank nor his associates were punished and he received no compensation for the alleged abuse. Plaintiff also alleges that he has filed multiple lawsuits against St. Barnabas relating to DeFrank's conduct, but he indicates that all of the actions have been dismissed. Plaintiff asserts,

> I, Arao Abel Pereira[,] Plaintiff in this referenced matter hereby to say that Saint Barnabas Medical Center and its staff deliberately used Black African patient on status of poverty and need. The administration was made aware of the ongoing dangerous malpractice of Mr. DeFrank against me but chose not to take action against Mr. DeFrank, never ever!

(*Id*. at 13-14 ¶ 90.) Plaintiff is presently in "psychological treatment, therapy, and counseling due to the permanent emotional distress brought by these sexual assaults and their poor handling." (*Id*. ¶ 87.)

Plaintiff seeks $5 million in damages for the alleged violations.

## DISCUSSION

A.    **Federal Claims**

1.    **Claims under Section 1983**

In this action, Plaintiff is attempting to bring claims of medical malpractice and negligence arising from medical care he received from January 2006 to the present, at multiple hospitals in the New York City-area. Because Plaintiff sues H+H and asserts that his federal constitutional or statutory rights were violated, the second amended complaint could be construed as asserting claims arising under 42 U.S.C. § 1983. Section 1983 provides redress for a deprivation of federally protected rights by persons acting under color of state law. *See* 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978). To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

Because the public hospitals that are operated by H+H cannot be sued, to pursue claims for alleged violations occurring at the hospitals, Plaintiff would have to bring claims against H+H, which can be sued under Section 1983. *See* N.Y. Unconsol. Laws §§ 7384(1), 7385(1); *see also Mejia v. NYC Health & Hosp. Corp.*, No. 16-CV-9706, 2018 WL 3442977, at *5 (S.D.N.Y. July 17, 2018) ("As a municipal corporation, [H+H] and its employees are state actors for purposes of Section 1983."). To state a claim under Section 1983 against a municipal entity such as H+H, it is not enough for Plaintiff to allege that one of its employees or agents engaged in some wrongdoing. Plaintiff must show that the entity itself caused the violation of his rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a

deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978))). He must allege facts showing (1) the existence of an H+H policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Rookard v. Health & Hosp. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983) (applying standard for Section 1983 municipal liability to H+H).

Plaintiff names H+H as the sole defendant in the caption of the second amended complaint, but he does not allege any facts suggesting that a policy, custom, or practice of H+H caused a violation of his federal constitutional rights. Throughout his pleading, Plaintiff makes assertions against multiple hospitals, including Bronx Lebanon, St. Barnabas, Montefiore, Bronx Hospital Center, Mount Sinai, Jacobi, and the Grand Concourse Medical Center. Of those hospitals, only Jacobi is operated by H+H; all of the other hospitals appear to be private. Plaintiff's only allegation concerning Jacobi is that in that in November 2022, and on June 15, 2023, he had two operations there to remove benign recurrent tumors. Because Plaintiff does not allege facts suggesting that the two operations at Jacobi give rise to a plausible inference that H+H had a policy or custom that caused a violation of his constitutional or statutory rights, he fails to state a Section 1983 claim against H+H.[4]

---

[4] The Court notes that there is no general right to medical care, even from a public entity such as H+H. A right to medical care by government authorities has been found only where there is a special custodial or other relationship between the person and the state. *See Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008); *see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197-200 (1989); *Henry v. New York City Hosp. & Health Corp.*, No. 00-CV-2537 (JSM) (AJP), 2000 WL 858345, at * 1 (S.D.N.Y. June 28, 2000). Such a special relationship can arise in scenarios involving incarceration, institutionalization, "or other similar restraint of personal liberty." *DeShaney*, 489 U.S. at 200. Plaintiff does not allege any facts suggesting that there is a special custodial or other relationship between himself and H+H giving rise to a constitutional right to medical care.

To the extent Plaintiff is attempting to assert Section 1983 claims against the private hospitals, they must be dismissed. A claim for relief under section 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties therefore generally are not liable under the statute. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties."). As Bronx Lebanon, St. Barnabas, Montefiore, Bronx Hospital Center, and Mount Sinai are private hospitals who are not alleged to work for any state or other government body, Plaintiff has not stated a claim against these hospitals under Section 1983.

### 2.    Claims under Section 1981

Because Plaintiff suggests that the private hospitals may have discriminated against him because of his race or national origin, the Court liberally construes the second amended complaint as attempting to assert claims of race discrimination under 42 U.S.C. § 1981 against those hospitals.[5] Section 1981 "protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race."[6] *Domino's Pizza,*

---

[5] Section 1981 does not provide a private right of action against state actors like H+H. *Duplan v. City of New York*, 888 F.3d 612 (2d Cir. 2018).

[6] Claims arising under Section 1981, as amended in 1991, are subject to the four-year statute of limitations set forth in 28 U.S.C. § 1658. *Andrews v. Freemantlemedia N.A., Inc.*, No. 13-CV-5174 (NRB), 2014 WL 6686590, at *5 (S.D.N.Y. Nov. 20, 2014), *aff'd sub nom. Andrews v. Fremantlemedia, N.A., Inc.*, 613 F. App'x 67 (Aug. 24, 2015); *see also Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (claims under Section 1981 are governed by a four-year statute of limitations "if the plaintiff's claim against the defendant was made possible by" an Act of Congress enacted after Dec. 1, 1990). Claims under Section 1981 generally accrue when the plaintiff knows or has reason to know of the injury that is the basis of the claim. *See Andrews*, 613 F. App'x at 68. To be timely as proper subjects of claims in this action, all alleged

*Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (quoting 42 U.S.C. § 1981(a)). To state a claim of discrimination under Section 1981, a plaintiff must allege facts showing that the plaintiff is a member of a racial minority, the defendant intended to discriminate against the plaintiff because of race, and the discrimination concerned "one of the statute's enumerated activities." *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 339 (2d Cir. 2000). "[I]t is [therefore] insufficient to merely plead that race was a motivating factor in the discriminatory action." *Brown v. Montefiore Med. Ctr.*, No. 19-CV-11474 (ALC), 2021 WL 1163797, at *5 (S.D.N.Y. Mar. 25, 2021) (citation omitted). Instead, "a plaintiff must initially plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media, Comcast Corp.*, 589 U.S. 327, 341 (2020).

Here, although Plaintiff repeatedly asserts that the private hospitals discriminated against him based on his race with respect to the medical care he received, his factual allegations do not suggest that race played any role in the medical care he received, or any actions taken by the private hospitals. Plaintiff alleges no facts suggesting that the private hospitals treated him differently because of his race in providing him with medical care than they treated similarly situated individuals of other races. The Court finds that Plaintiff's assertions of race-based discrimination are conclusory and dismisses any potential Section 1981 claim for failure to state a claim upon which relief may be granted.

### 3.    Claims under Title II of the Civil Rights Act of 1964

Plaintiff's second amended complaint could also be read as asserting race and national origin discrimination claims under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000(a).

---

violations of Section 1981 would have had to occur on or after November 21, 2019, four years before Plaintiff filed this action.

Section 2000(a) prohibits discrimination in public accommodations on the basis of race, color, religion, or national origin. 42 U.S.C. § 2000(a) ("All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined by this section, without discrimination on the ground of race, color, religion, or national origin.").

As explained above, Plaintiff has not shown that his race was a motivating factor in the medical care that he received, much less that, "but for" his race, the events giving rise to this complaint would not have occurred. *See, e.g.*, *Calvino v. Chance*, No. 20-CV-346 (CM), 2020 WL 419814, at *2 (S.D.N.Y. Jan. 27, 2020) (allegations that homeless shelter staff disrespected a person for non-protected reasons could not support a claim under 42 U.S.C. § 2000a(a)); *Verhagen v. Olarte*, No. 89-CV-309 (CSH), 1989 WL 146265, at *1 (S.D.N.Y. Nov. 21, 1989) (holding that the *pro se* complaint did not state a claim under Section 2000(a), or any other antidiscrimination statute, because it was "long on conclusory language which tracks one statute or another, but short on specific allegations in support of the conclusory charges."). Plaintiff's assertions of race and national origin discrimination are conclusory; he does not allege any facts showing that his race or national origin was a factor in any perceived deficiency of the health care that he received. The Court dismisses any discrimination claims Plaintiff is asserting under Title II of the Civil Rights Act of 1964 for failure to state a claim upon which relief may be granted.

The Court has considered all possible federal claims suggested by Plaintiff's assertions of constitutional violations and discrimination on the basis of his race and national origin and finds that he has failed to state a claim for relief against H+H, the only defendant named in the caption of the second amended complaint, and the private hospitals he refers to in connection with his

allegedly deficient healthcare. The Court therefore dismisses Plaintiff's federal claims under Sections 1983 and 1981 and Title II of the Civil Rights Act of 1964 for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.    State Law Claims**

Plaintiff also invokes the court's diversity jurisdiction, asserting that he is an Angolan citizen and that the defendant, presumably H+H, is an American. He does not plead facts about the citizenship of any of the private hospitals he refers to in the second amended complaint. To establish jurisdiction under 28 U.S.C. § 1332, a plaintiff must first allege that the plaintiff and the defendant are citizens of different states.[7] *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.,* only if there is no plaintiff and no defendant who are citizens of the same State."). In addition, the plaintiff must allege to a "reasonable probability" that the claim is in excess of the sum or value of $75,000.00, the statutory jurisdictional amount. *See* 28 U.S.C. § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted).

Diversity jurisdiction "is available only when all adverse parties to a litigation are completely diverse in their citizenships." *Franceskin v. Credit Suisse*, 214 F.3d 253, 258 (2d Cir. 2000). Under 28 U.S.C. § 1332(a)(2), diversity of citizenship does exist between "citizens of a

---

[7]A corporation is a citizen of both the State where it is incorporated and the State where it has its principal place of business. *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). " An individual's citizenship, within the meaning of the diversity statue, is determined by his domicile." *Johnson v. Smithsonian*, 4 F. App' x 69, 70 (2d Cir. 2001) (citing *Palazzo v. Corio*, 232 F.3d 88, 42 (2d Cir. 2000)). Domicile is " the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) (internal quotation marks omitted).

State and citizens or subjects of a foreign state," but "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled" *Id*. Thus, under Section 1332(a)(2), an alien who has been formally granted permanent residence in the United States (*i.e.*, has obtained a green card) is a citizen of the State where the alien is domiciled. *See Mejia v. Barile*, 485 F. Supp. 2d 364, 367 (S.D.N.Y. 2007); *Mor v. Royal Caribbean* Cruises Ltd., No. 12-CV-3845(JGK), 2012 WL 2333730, at * 1 (S.D.N.Y. June 19, 2012) (collecting cases); *see also Kato v. Cnty. of Westchester,* 927 F.Supp. 714, 716 (S.D.N.Y.1996) ("[A]liens who have been accorded lawful permanent resident status under the immigration laws are considered aliens 'admitted for permanent residence,' while aliens admitted to the United States on temporary nonimmigrant visas are not."). Because it is an individual's immigration status that determines "citizenship" for diversity purposes under Section 1332(a)(2), immigrants present in the United States on a non-permanent basis are considered citizens of their home country for purposes of diversity jurisdiction. *See Kato*, 937 F. Supp. at 716; *see also Gousse v. Giardullo*, No. 21-CV-0489, 2021 WL 429970, at *2 (E.D.N.Y. Feb. 8, 2021) (finding that a non-permanent resident of the United States is a citizen of his home country for purposes of diversity jurisdiction); *Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp. 2d 632, 637–38 (E.D.N.Y. 2000) (explaining that because the decedent "had been a Japanese citizen residing in the United States on a 'temporary' E–2 visa that does not confer 'permanent residency status' for the purposes of 28 U.S.C. § 1332(a)[,] [i]t followed that the plaintiff should be treated as an alien");

     Plaintiff does not allege facts demonstrating that the Court has diversity jurisdiction of this action. His assertions fail to satisfy both prongs of the diversity statute. First, he does not state whether he is a permanent resident, a naturalized United States citizen, or neither. If

Plaintiff has been lawfully granted permanent residence or citizenship in the United States, then under Section 1332(a)(2), he qualifies as a citizen of the state where he resides for purposes of the Court's diversity jurisdiction. If he is residing in the United States on a visa or some other basis and has not been conferred either permanent residency status or citizenship, he is considered an alien for purposes of diversity jurisdiction. Plaintiff does not plead facts regarding his immigration status. Second, the Court presumes that H+H can be considered a citizen of New York, but Plaintiff does not specify the state(s) of citizenship of the private hospitals named in the complaint. For the reasons stated above, he has not established that complete diversity exists between him and H+H or the private hospitals he seeks to sue. Finally, although Plaintiff asserts that he seeks $5 million in damages, he does specify the legal basis for the damages he seeks.

Because Plaintiff has failed to allege facts showing that the Court has diversity of citizenship jurisdiction of this matter, the Court dismisses Plaintiff's state law claims for lack of subject matter jurisdiction.[8] *See* Fed. R. Civ. P. 12(h)(3).

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Even though the Court has already

---

[8] Generally, "when the federal law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); 28 U.S.C. § 1367(c)(3) (A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction."). The Court has dismissed Plaintiff's federal claims and, unless the Court has diversity jurisdiction under 28 U.S.C. § 1332, it is appropriate to decline to exercise supplemental jurisdiction of any state law claims.

granted Plaintiff two opportunities to amend his pleading, in light of his *pro se* status and in an abundance of caution, the Court grants Plaintiff an additional 30 days leave to file a third amended complaint. If Plaintiff wishes to proceed under the Court's diversity jurisdiction, he must name as defendants in the caption of the third amended all of the entities or individuals he wishes to sue.[9] Plaintiff must specifically state whether he is an alien for purposes of diversity citizenship because he has not been conferred a green card for permanent residency, is not a naturalized citizen of the United States, and therefore is considered a citizen of his home country, Angola. If he holds a green card or is a citizen of the United States, he must also allege facts demonstrating that he and all the named defendants are citizens of different states. He must allege the state(s) of citizenship of all the named defendants. In addition, Plaintiff must allege facts indicating and that the value of his claims exceeds $75,000.00. Finally, Plaintiff must state facts in support of the state law claims he is asserting.[10]

---

[9] Plaintiff indicates that he previously filed state court actions against one or more of the private hospitals in connection with some of same events giving rise to his claims. Insofar as he seeks to relitigate matters addressed in the prior state court litigation, those claims may be precluded by the *Rooker-Feldman* doctrine. The doctrine – created by two Supreme Court cases, *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 415-16 (1923), and *D.C. Ct. of App. v. Feldman*, 460 U.S. 462, 482-86 (1983) – precludes federal district courts from reviewing final judgments of the state courts. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

[10] The Court notes that, under New York law, the statute of limitations for a medical malpractice and negligence claim is two years and six months. *See* N.Y. C.P.L.R. § 214-a. Generally, to be timely, all alleged deficient medical care would have had to occur within the 30 months before Plaintiff filed this action on November 11, 2023. "[A]lthough the statute of limitations is ordinarily an affirmative defense that the defendant must raise at the pleadings stage . . . , district courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted." *Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) (internal quotation marks and citations omitted).

**CONCLUSION**

The Court dismisses the second amended complaint for failure to state a claim on which relief can be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), and for lack of jurisdiction of his state law claims, *see* Fed. R. Civ. P. 12(h)(3). All other pending matters in this case are terminated.

The Court, however, grants Plaintiff 30 days' leave to file a third amended complaint, as specified in this order. If Plaintiff does not file a third amended complaint within the time allowed, or fails to show cause as to such failure, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons stated in this order.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:    September 9, 2024
          New York, New York

                              /s/ Laura Taylor Swain
                              LAURA TAYLOR SWAIN
                              Chief United States District Judge

18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

_____

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

_____CV_____
(Include case number if one has been assigned)

**THIRD AMENDED**

**COMPLAINT**

Do you want a jury trial?
☐ Yes     ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐   **Federal Question**

☐   **Diversity of Citizenship**

## A.   If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

_____

## B.   If you checked Diversity of Citizenship

### 1.   Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____, is a citizen of the State of
                          (Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
         (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____ .

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____ .

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional
pages if needed.

_____
First Name         Middle Initial     Last Name

_____
Street Address

_____
County, City            State        Zip Code

_____
Telephone Number      Email Address (if available)

## B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

First Name _____ Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City _____ State _____ Zip Code

Defendant 2:

First Name _____ Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City _____ State _____ Zip Code

Defendant 3:

First Name _____ Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City _____ State _____ Zip Code

Defendant 4: _____

    First Name               Last Name

    _____

    Current Job Title (or other identifying information)

    _____

    Current Work Address (or other address where defendant may be served)

    _____

    County, City           State           Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Street Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

| | |
|---|---|
| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.